Northern States Company, Inc., Plaintiff-Appellee, v. A. Finkl & Sons Company, Defendant-Appellant, and Patrick J. Collins, Defendant.
A. Finkl & Sons Company, Counterclaimant-Appellant, v. Northern States Company, Inc., Bituminous Casualty Corporation, and Patrick J. Collins, Counterdefendants-Appellees.

### Gen. No. 46,744.

First District, Third Division.
January 11, 1956.
Rehearing denied February 29, 1956.
Released for publication February 29, 1956.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago, for defendant-appellant and counterclaimant-appellant; Oswell G. Treadway, John M. Moelmann, and John L. Kirkland, all of Chicago, of counsel.

Andrew J. Farrell, of Chicago, for plaintiff-appellee and counterdefendants-appellees; Thomas J. Weithers, of Chicago, of counsel.

JUDGE FEINBERG delivered the opinion of the court.

Plaintiff filed a complaint for a declaratory judgment that an indemnity agreement given by it, as contractor, to defendant A. Finkl & Sons Company, did not cover an accident occurring to defendant Collins, an employee of plaintiff. Defendant Finkl filed a counterclaim for declaratory judgment that said indemnity did cover the accident in question. A hearing by the court resulted in a decree in favor of plaintiff and its insurance carrier, declaring that said indemnity did not cover said accident.

It appears from the evidence that defendant Collins, an employee of plaintiff, was struck by a crane owned and maintained by defendant Finkl and operated by one of the latter's employees on defendant's premises. The crane was being used to unload some pieces of amorphous carbon, which belonged to defendant Finkl, to be used in testing the electromelt furnaces. The operation was directed by defendant's superintendent. Plaintiff contracted to do the electrical work for the furnaces to be used in the manufacture of various steel products.

The contract between plaintiff contractor and defendant Finkl contained the following provision:

"It is expressly understood and agreed that the Contractor shall be responsible for any and all injury due to damage to any person and/or property, including loss of human life arising *directly or indirectly* from or in connection with work performed or to be performed under this contract, including extra work, and shall hold the Owner harmless of any and all loss or damage from such injury, damage or death. The Contractor further agrees to maintain such insurance as will fully protect both the Contractor and the Owner from any and all claims under any Workmen's Compensation Act or Employer's Liability Laws, and from any and all other claims of whatsoever kind or nature for

the damage to property or for personal injury, including death, made by anyone whomsoever which may arise from operations carried on under this contract, either by the Contractor, any Subcontractor or by anyone directly or indirectly engaged or employed by either of them." (Italics ours.)

A scaffold had been erected above the 40-ton crane, and Collins on the day of the accident in question was working on the overhead lighting system from the top of this scaffold. Shortly before noon on the day of the accident, Collins left the scaffolding, walked about 60 feet west on the north overhead crane rail toward a ladder, to descend to the ground level. The foreman and other men who were working with him walked down a runway of the crane to a ladder. No one saw Collins until a few minutes after the accident happened.

The evidence discloses that defendant's employee, operating the crane involved in the accident, rang a bell before starting the crane. Apparently, part of the crane came in contact with Collins, pinning him against a wall, causing the injuries complained of. Thereafter Collins made claim against plaintiff contractor under the provisions of the Workmen's Compensation Act, and a settlement was made in the sum of $7250.

Collins also filed suit in the Circuit Court for his personal injuries, charging defendant Finkl with various acts of negligence. Defendant Finkl notified plaintiff contractor and the insurance carrier of the suit, and demanded that plaintiff hold defendant harmless, pursuant to the indemnity provision, and to defend said personal injury suit. Plaintiff and its insurance carrier refused to undertake the defense of the suit or to hold the owner harmless, on the ground that the indemnity does not cover the accident due to the alleged negligence of Finkl. The Bituminous Casualty Company was the insurance carrier for plaintiff.

421

The only question presented upon this appeal is whether the indemnity is broad enough to cover the accident in question.

Russell v. Shell Oil Co., 339 Ill. App. 168, involved a similar question. There the indemnity was not as broad as the one before us. It read:

". . . agreed to indemnify and hold defendant harmless from any and all claims for injury to persons, including plaintiff's [Russell's] employees, resulting from or arising in connection with any of his operations."

It was there contended that the indemnity did not cover claims for damages arising out of the negligence of defendant, its agents, servants or employees, and therefore was not to be construed as indemnifying defendant against its own negligence. In that case the injured employee of the contractor was engaged in painting a pole on the premises of the owner. It was alleged that the pole was maintained in an unsafe and dangerous condition, and that while the injured employee was working on the pole, it pulled out of the earth, causing him to fall and resulting in his injuries. This court, speaking through the learned late Justice Scanlan, held that the negligence of either the contractor or the owner did not enter into the proper construction of the indemnity agreement, because the injury resulted from or arose in connection with the contractor's operations, against which he agreed to hold defendant harmless.

It will thus be seen that the language of the indemnity in the instant case, "that the Contractor shall be responsible for any and all injury due to damage to *any person* and/or property, . . . *arising directly or indirectly from or in connection with work performed* or to be performed under this contract . . . and shall hold the Owner harmless of any and all loss or damage from such injury," (italics ours), is much

broader than that in the Russell case. It does not exclude a case of injury to "any person" due to negligence of Finkl. We think the reasoning and holding in the Russell case should be applied to the instant case.

Under similar facts, the reasoning and holding in Aluminum Co. of America v. Hully, 200 F.2d 257 (8th C. A.), which quoted with approval from the Russell case, are also applicable.

Other questions raised need not be considered.

The court below should have entered a decree declaring that the indemnity in question covers the accident to Collins.

The decree of the Superior Court is reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

Reversed and remanded with directions.

KILEY, J., concurs.

LEWE, P. J., took no part.