BOBBY G. DELLINGER, APPELLANT,
v. OMAHA PUBLIC POWER DISTRICT ET AL., APPELLEES.
BOBBY G. DELLINGER, APPELLANT, v. A.L.M. CORPORATION
AND JOHN WICHMAN, INDIVIDUALLY, APPELLEES.
611 N.W. 2d 132

Filed May 30, 2000.    Nos. A-99-210, A-99-211.

Phillip G. Wright and Michael F. Gutowski, of Quinn & Wright, for appellant.

Timothy A. Clausen, of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., for appellee Omaha Public Power District.

Stephen G. Olson II and Jason R. Yungtum, of Hansen, Engles & Locher, P.C., for appellee Foley Company.

Michael T. Gibbons, of Woodke, Otepka & Gibbons, P.C., for appellees A.L.M. Corporation and John Wichman.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Bobby G. Dellinger appeals from a judgment entered in favor of Omaha Public Power District (OPPD), Standard Sheet Metal, Inc. (Standard), Foley Company (Foley), A.L.M. Corporation (A.L.M.), and John Wichman in this action for injuries sustained while Dellinger was employed by Foley's subcontractor, Standard, on a construction project on OPPD property. We find that OPPD did not maintain sufficient control over the construction project to be liable for Dellinger's injuries, that the injuries were not the result of a peculiar risk sufficient for Foley to be liable for Dellinger's injuries, and that A.L.M. and Wichman did not breach any duty owed to Dellinger. Accordingly, we affirm the judgment of the district court.

## II. BACKGROUND

According to the record, Dellinger was a sheet metal worker for over 30 years. On August 19, 1992, Dellinger was working on a project on OPPD property in Nebraska City, Nebraska. Foley had contracted with OPPD, and Foley was the general contractor on the project.

On August 19, 1992, Dellinger was working on the roof of an OPPD powerhouse. Dellinger testified that he was using a wheel hoist to pull cable up to the roof. As Dellinger was guiding the

cable, the wheel hoist came loose from an I-beam. Dellinger grabbed the cable with his right hand to keep it from falling and experienced pain in his arm, neck, and back.

On November 8, 1994, Dellinger filed an amended petition alleging negligence on the part of OPPD and Foley. On December 27, 1996, Dellinger filed an amended petition alleging negligence on the part of A.L.M. and Wichman. The two cases were consolidated for trial, and a jury trial was waived.

On September 24, 1998, the parties filed a stipulation of facts. The parties stipulated that OPPD and Foley entered into a contract for work to be performed at the Nebraska City power plant, that Foley entered into a subcontractor agreement with Standard to build "explosion panels," and that the incident which formed the basis of Dellinger's claim occurred on August 19, 1992. The parties stipulated that Dellinger was performing his job duties for Standard and that the wheel hoist involved in the incident was owned by Standard.

On January 15, 1999, the district court entered a judgment in these consolidated cases. The court found that OPPD did not retain control of the project or of Foley and did not exercise actual control during the project. The court found that Foley did not maintain control of work done by Standard or Standard's employees. The court also found that A.L.M. and Wichman did not exercise any control, but were hired by OPPD to conduct inspections for quality control purposes only. The court found that neither OPPD nor Foley failed to provide a safe workplace and found that no special risk or danger was involved in this case. The court entered judgment in favor of the defendants.

On January 25, 1999, Dellinger filed a motion for new trial. The court overruled the motion on February 3. This timely appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Dellinger has assigned three errors. First, Dellinger asserts that the district court erred in finding that OPPD did not retain sufficient control to have a nondelegable duty to provide a safe workplace. Second, Dellinger asserts that the district court erred in finding that Foley did not have a non-delegable duty to ensure the wheel hoist was safe. Third,

Dellinger asserts that the district court erred in finding that A.L.M. and Wichman owed no duty to Dellinger.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *General Fiberglass Supply v. Roemer*, 256 Neb. 810, 594 N.W.2d 283 (1999). The appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

For actionable negligence, there must be a defendant's legal duty to protect the plaintiff from injury, a failure to discharge that duty, and damage resulting from such undischarged duty. *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). "Duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff, and in negligence cases, the duty is to conform to the legal standard of reasonable conduct in light of the apparent risk. *Id.* A duty in negligence cases may be defined as an obligation to which the law will give recognition and effect to conform to a particular standard of conduct toward another. *Id.* The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.*

### 2. OPPD

Generally, one who employs an independent contractor is not liable for the contractor's negligence. *Parrish v. Omaha Pub. Power Dist., supra.* However, the employer of an independent contractor may be liable if the employer retains control over the contractor's work, or if, by rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. *Id.* As such, a property owner who employs a general contractor may be held liable for injuries to a subcontractor's employee where the property owner retains suf-

ficient control over the work done on the premises, or if there is a nondelegable duty to protect the subcontractor's employee from harm. See *id.*

In the present case, Dellinger's assigned error challenges the district court's finding that OPPD did not retain control over the work. Dellinger does not assign anything concerning any nondelegable duty owed by OPPD, and we, accordingly, will not further consider any nondelegable duties OPPD may have owed to Dellinger.

In *Parrish v. Omaha Pub. Power Dist., supra,* the Supreme Court held that OPPD, as owner of the premises, could be held liable for injuries to a subcontractor's employee if OPPD was found to have retained control over the contractor's work. Generally, the court has required that the owner retain control of the premises before liability is imposed and that an owner might be considered to maintain adequate "possession" if the owner's involvement in overseeing the construction is substantial. See *Hand v. Rorick Constr. Co.,* 190 Neb. 191, 206 N.W.2d 835 (1973). See, also, *Parrish v. Omaha Pub. Power Dist., supra.* In the present case, the district court specifically found that OPPD did not retain such control. The contract between OPPD and Foley specifically delegated all safety issues to Foley. The contract also specifically provided that all work was under the charge and control of Foley. OPPD retained only the right to inspect the work to see if it conformed to the contract. Further, Dellinger produced no evidence to indicate that OPPD actually retained any control over the worksite or the project being done. The evidence supports the district court's conclusion that OPPD merely retained the right to inspect for compliance with the contract, but did not retain sufficient control of the work to give rise to a legal duty to protect Dellinger from harm. This assigned error is without merit.

### 3. FOLEY

Dellinger asserts that the district court erred in finding that Foley did not have a nondelegable duty to protect him from harm. A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties neg-

ligently performed. *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993). Liability for breach of a nondelegable duty is an exception to the general rule that one who employs an independent contractor is not liable for the independent contractor's negligence. *Id.* Nondelegable duties include the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, a duty imposed by statute or rule of law, and the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *Parrish v. Omaha Pub. Power Dist., supra.*

### (a) Safe Workplace

A general contractor in control of the premises where work performance under a contract with the owner is being carried out owes a duty to persons rightfully on the premises to keep the premises in a reasonably safe condition while the contract is in the course of performance. *Parrish v. Omaha Pub. Power Dist., supra.* Moreover, when a general contractor assumes a contractual duty for the safety of workers at a construction site, the contractor's duty cannot be delegated to a subcontractor. *Id.*

The district court specifically found that neither OPPD nor Foley failed to provide a safe place for Dellinger to work. The evidence presented in this case supports the court's conclusion. Although the contract between Foley and OPPD imposed the obligation for safety on Foley, Dellinger was not injured by an unsafe workplace, but was injured because he was using a wheel hoist that was apparently not properly secured. The wheel hoist was owned, maintained, and used exclusively by employees of Dellinger's employer, Standard. There is no evidence to indicate that Foley breached any nondelegable duty to provide a safe workplace. See *Hand v. Rorick Constr. Co., supra* (instrumentality causing injury was not unsafe premises but equipment owned, controlled, and erected by subcontractor).

Additionally, to impose liability on a general contractor for injury to a subcontractor's employee, the general contractor must have supervised the work that caused the injury to the employee, had actual or constructive knowledge of the danger

which ultimately caused the injury, and had the opportunity to prevent the injury. *Parrish v. Omaha Pub. Power Dist., supra.* In the present case, Dellinger testified that he alerted people at the safety meetings about the deficiencies of the wheel hoist. However, Dellinger provided no confirmation of this allegation, and indeed, other witnesses when asked about Dellinger's complaints testified that they never heard him complain about the wheel hoist. As such, the evidence supports the district court's conclusion that Dellinger failed to demonstrate Foley should be held liable for failing to provide for his safety concerning the wheel hoist. This assigned error is without merit.

### (b) Statute or Rule of Law

Dellinger has cited us to no statute or rule of law which imposes a nondelegable duty on Foley. As such, we need not further consider this basis for nondelegable duties.

### (c) Peculiar Risk

Dellinger asserts that Foley owed a nondelegable duty for safety because the work being done involved a peculiar or special risk of danger. If a general contractor hires an independent contractor to perform work which the general contractor should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, the general contractor may be liable for physical harm caused to employees of the subcontractor if the general contractor fails to exercise reasonable care to take such precautions, even though the general contractor has provided, in the contract or otherwise, that the subcontractor be responsible for such precautions. *Parrish v. Omaha Pub. Power Dist.,* 242 Neb. 783, 496 N.W.2d 902 (1993).

A peculiar risk must involve some special hazard resulting from the nature of the work done, which calls for special precautions. *Id.* In *Parrish,* the Nebraska Supreme Court acknowledged that steel construction work involves risks which are considered peculiar risks. See, also, *Anderson v. Nashua Corp.,* 246 Neb. 420, 519 N.W.2d 275 (1994) (holding that painting inside of underground tank using highly combustible paint fumes creates peculiar risk); *Simon v. Omaha P. P. Dist.,* 189 Neb. 183,

202 N.W.2d 157 (1972) (holding that steamfitter work near opening on floor deck exposing vertical reinforcing rods creates peculiar risk); *Kubisz v Cadillac Gage*, 236 Mich. App. 629, 601 N.W.2d 160 (1999) (holding that welding container that previously held diesel fuel involved peculiar risk). However, we believe the facts of the present case, and the injuries suffered by Dellinger, are distinct from the injuries attendant the peculiar risks associated with steel construction work.

In *Lunde v. Winnebago Industries, Inc.*, 299 N.W.2d 473 (Iowa 1980), the Iowa Supreme Court appropriately turned the focus in peculiar risk analysis toward whether the risk in fact realized by the plaintiff was actually a peculiar risk inherent in the nature of the specific work being done, as opposed to collateral acts of negligence by coemployees. See, also, *McDaniel v. Business Inv. Group, Ltd.*, 709 N.E.2d 17 (Ind. App. 1999) (holding that actual injury sustained must result from particularized harm identified by peculiar risk). Similarly, in *Parrish v. Omaha Pub. Power Dist., supra*, the Nebraska Supreme Court noted that liability for peculiar risks extends to the general contractor's failure to ensure that precautions are taken against special hazards inherent in the work of the subcontractor. A clear example of applying this inherent risk analysis is the California case *Anderson v. Chancellor Western Oil Develop. Corp.*, 53 Cal. App. 3d 235, 125 Cal. Rptr. 640 (1975).

In *Anderson v. Chancellor Western Oil Develop. Corp.*, the California Court of Appeals acknowledged that there were some risks peculiar to the drilling of oil wells. However, the injury suffered by the plaintiff occurred as a result of a failure to fasten one end of a board on a scaffold-like structure. The court determined that although there were peculiar risks involved in the work being done, the injury sustained by the plaintiff was not as a result of a peculiar risk, but, rather, was caused by a collateral act of negligence.

The present case is startlingly comparable to the *Anderson* case. In cases such as the present case, where the injury can be traced to an act of negligence rather than a peculiar risk associated with the work being done, we find the analysis of the Iowa and California courts to be useful. In the present case, although there were certainly peculiar risks associated with the steel con-

struction work Dellinger was doing, the actual risk realized by him was the result of the failure to properly secure the wheel hoist to an I-beam. This harm was not the result of any risk peculiar to the job being done, and there is no evidence that Foley breached any nondelegable duty arising as a result of the peculiar harms involved in this project. This assigned error is without merit.

### 4. A.L.M. AND WICHMAN

Dellinger asserts that the district court erred in finding that A.L.M. and Wichman owed no duty to Dellinger. The district court found that A.L.M. and Wichman were merely other individual contractors and that they owed a duty only to take reasonable care not to cause injury to Dellinger. The evidence at trial indicated that OPPD entered a contract with A.L.M. to hire Wichman, an A.L.M. employee, to look for conformance to the contract and the finished product and that Wichman's inspection for safety was only concerning gross violations that Wichman noticed. Dellinger provided no evidence that the wheel hoist constituted a gross safety violation, and provided no evidence that Wichman or A.L.M. owed any specific duty regarding safety. The evidence supports the district court's findings in this regard, and this assigned error is without merit.

### V. CONCLUSION

The evidence supports the district court's finding that OPPD did not retain sufficient control over the project or the premises to impose a legal duty to Dellinger. The evidence supports the district court's finding that Foley did not breach any nondelegable duty owed to Dellinger. The evidence supports the district court's finding that A.L.M. and Wichman owed no duty to Dellinger. As such, we affirm the district court's judgment.

AFFIRMED.