KUBISZ v CADILLAC GAGE TEXTRON, INC

Docket No. 200326. Submitted September 1, 1998, at Detroit. Decided August 3, 1999, at 9:00 A.M.

John and Dorothy Kubisz brought an action in the Macomb Circuit Court against Cadillac Gage Textron, Inc., alleging negligence in connection with injuries sustained by John Kubisz when the fuel tank of a prototype light-armored amphibious tank exploded as John Kubisz was welding a rupture in the fuel tank. At the time of the accident, John Kubisz was working as an employee of Omni-Tek, which in turn was retained by the defendant as an independent contractor to perform work on the prototype. A jury returned a verdict and award of damages for the plaintiffs. The court, Deborah A. Servitto, J., entered a judgment consistent with the verdict. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion for partial summary disposition of the plaintiffs' claim that the defendant was liable under the "inherently dangerous activity" exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees. At the time the motion was made, a question of fact existed regarding whether the welding of the fuel tank was an inherently dangerous activity.

2. The trial court did not err in denying the defendant's motion for a directed verdict with respect to the plaintiffs' claim that the defendant was liable under the "retained control" exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees. The evidence, viewed in the light most favorable to the plaintiffs, was sufficient to create a question of fact with regard to whether the defendant retained sufficient control over the work.

3. The defendant failed to preserve for appellate review its claim that the trial court committed error requiring reversal in admitting into evidence various safety regulations and standards. The defendant's grounds for objecting at trial to the admission of this evidence are different from the grounds on which its appeal was based.

Objections based on one ground are insufficient to preserve an appellate review based on other grounds.

4. None of the remarks by the plaintiffs' counsel that the defendant alleged were improper for closing argument warrants a reversal. The plaintiffs' counsel did not impugn the integrity of defense counsel when remarking that defense counsel did not produce a certain witness at trial for fear that the witness would provide perjurious testimony. The plaintiffs' counsel, when remarking about the testimony of an employee of the defendant, did not improperly suggest to the jury that the defendant had pressured the employee to blame John Kubisz for the accident; on the contrary, it is clear that the plaintiffs' counsel was attempting to explain the differences that existed between John Kubisz' testimony and the employee's testimony regarding whether John Kubisz had ever admitted fault to the employee. The plaintiffs' counsel did not appeal to the fears and prejudices of the jury, or inject issues into the trial broader than those pleaded and brought out by testimony below, in remarking that the jury was the "voice of the community" with respect to setting damages.

Affirmed.

1. MASTER AND SERVANT — INDEPENDENT CONTRACTORS — NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES.

The employer of an independent contractor generally is not liable for the contractor's negligence; liability may be imposed under the "inherently dangerous" activity doctrine when the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the contract; the risk of danger must be recognized in advance, at the time the contract is made; liability should not be imposed under the doctrine where a new risk is created in the performance of the work and the risk was not reasonably contemplated at the time of the contract.

2. MASTER AND SERVANT — INDEPENDENT CONTRACTORS — NEGLIGENCE — RETAINED CONTROL OVER WORK.

The employer of an independent contractor generally is not liable for the contractor's negligence; liability may be imposed, however, where the employer effectively retains control over the work involved.

3. TRIAL — IMPROPER COMMENTS BY COUNSEL — APPEAL.

The Court of Appeals when reviewing asserted improper comments by an attorney first determines whether the attorney's action was error and, if it was, whether the error requires reversal; an attor-

ney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial; reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved.

*Chambers Steiner, P.C.* (by *Courtney E. Morgan, Jr.*), and *Granzotto & Nicita, P.C.* (by *Angela J. Nicita*), for the plaintiffs.

*Meganck, Cothorn & Stanczyk, P.C.* (by *John A. Cothorn, Suzanne C. Stanczyk,* and *Elizabeth L. Sokol*), for the defendant.

Before: HOLBROOK, JR., P.J., and MARKEY and WHITBECK, JJ.

PER CURIAM. Defendant appeals as of right from a judgment for plaintiffs, following a jury trial, in this personal injury case. We affirm.[1]

### I. BACKGROUND FACTS

Plaintiff John Kubisz (hereinafter "plaintiff") was injured while employed by Omni-Tek, an independent contractor with which defendant had contracted to perform modifications and firearms upgrades on a prototype military vehicle. The vehicle was being changed from a light-armored amphibious personnel carrier to a light-armored amphibious tank. The modifications included the removal of twelve seats used to

---

[1] Although defendant mentions that it moved for remittitur in its brief, defendant does not argue the merits of the trial court's decision or provide any argument on appeal that it was entitled to remittitur. Accordingly, that issue is not properly before this Court. A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. *Joerger v Gordon Food Service, Inc,* 224 Mich App 167, 178; 568 NW2d 365 (1997).

transport personnel, the addition of a firearms turret, and the replacement of the existing diesel fuel tank with a lighter diesel fuel tank made of aluminum. On May 7, 1991, the modified vehicle was tested to see how well it would float.[2] During the course of the day, the vehicle was driven into the water by plaintiff on three separate occasions. After the first two tests, changes were made to help stabilize the vehicle in the water. After the third test, as plaintiff was driving the vehicle back to the shop, the new fuel tank ruptured along a bottom seam. On May 8, 1991, as plaintiff was attempting to weld the fifteen-inch rupture, the tank exploded, causing severe burns to plaintiff's upper body, including his face, chest, hands and arms, and abdomen.

## II. DEFENDANT'S MOTIONS FOR SUMMARY DISPOSITION AND A DIRECTED VERDICT

Defendant argues that the trial court erred in denying its motions for partial summary disposition and a directed verdict with regard to plaintiff's claim premised on an inherently dangerous activity theory.[3] Defendant also argues that the trial court erred in denying its motion for a directed verdict with regard to plaintiff's claim premised on a theory of retained control. In each instance we disagree.

---

[2] The record indicates that as of the May 7, 1991, tests, the seats had been removed and the aluminum fuel tank attached. The firearms turret had not yet been attached.

[3] Defendant's question presented on the first issue includes a reference to its motion for judgment notwithstanding the verdict, new trial, or remittitur. In that motion, however, defendant did not argue that there was insufficient evidence to support the jury's verdict under the theories of inherently dangerous activity or retained control. Therefore, those issues are not properly before this Court. *Auto Club Ins Ass'n v Lozanis*, 215 Mich App 415, 421; 546 NW2d 648 (1996).

A. SUMMARY DISPOSITION

We review a "trial court's denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Terry v Detroit*, 226 Mich App 418, 423; 573 NW2d 348 (1997).

> A motion pursuant to MCR 2.116(C)(10),[4] tests the factual basis underlying a plaintiff's claim. MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact . . . . A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).]

"The inherently dangerous activity doctrine is an exception to the general rule that an employer of an independent contractor is not liable for the contractor's negligence or the negligence of his employees." *Bosak v Hutchinson*, 422 Mich 712, 724; 375 NW2d 333 (1985) (citing 2 Restatement Torts, 2d, § 409, p 370; 41 Am Jur 2d, Independent Contractors, § 41, p 805). Accord *Rasmussen v Louisville Ladder Co, Inc*, 211 Mich App 541, 548-549; 536 NW2d 221 (1995).

> Under the doctrine, liability may be imposed when "the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the con-

---

[4] Although defendant's motion for partial summary disposition was premised on MCR 2.116(C)(8) and (10), because both parties and the trial court relied on matters outside the pleadings, this issue will be reviewed under MCR 2.116(C)(10). *Driver v Hanley (After Remand)*, 226 Mich App 558, 562; 575 NW2d 31 (1997).

tract." The risk or danger must be recognizable in advance, i.e., at the time the contract is made. The Court in *Bosak* emphasized that liability should not be imposed where a new risk is created in the performance of the work and the risk was not reasonably contemplated at the time of the contract. [*Szymanski v K mart Corp*, 196 Mich App 427, 431; 493 NW2d 460 (1992), vacated and remanded on other grounds 442 Mich 912 (1993) (citations omitted).]

After reviewing the relevant documentary evidence in a light most favorable to plaintiff, we agree with the trial court that with respect to defendant's motion for summary disposition, there existed a question of fact regarding whether the welding of the fuel tank was an inherently dangerous activity. Plaintiff presented deposition testimony by a welding expert that the welding of the fuel tank was inherently dangerous, and that defendant should have anticipated the activity and the special dangers of the activity at the time the project began. Additionally, there was evidence that defendant was aware that the activity of welding a fuel tank, which previously held diesel fuel, carried a special danger inherent to the very nature of the task. There was also evidence that known and applicable relevant safety precautions—including the use of qualified personnel—were not followed. Finally, the documents indicate that defendant knew that the process of refitting the vehicle could include unanticipated on-site adjustments.

### B. DIRECTED VERDICT

"This Court reviews de novo the trial court's decision on a motion for a directed verdict." *Braun v York Properties, Inc*, 230 Mich App 138, 141; 583 NW2d 503 (1998). "When evaluating a motion for a directed ver-

dict, a court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in favor of the nonmoving party. Directed verdicts are appropriate only when no factual question exists upon which reasonable minds may differ." *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997) (citations omitted).

### 1. INHERENTLY DANGEROUS ACTIVITY

After reviewing the record, we conclude that plaintiff presented sufficient evidence at trial to preclude a directed verdict for defendant. Undisputed evidence was presented that the activity of welding containers that previously held diesel fuel carried a serious risk of injury and involved a peculiar risk to workers unless a high degree of care was taken. In addition, there was evidence that because the blueprints were designed and drawn by defendant and the project involved removal and replacement of the diesel fuel tank, defendant should have anticipated that such welding might occur. Further, both Peter Krawiecki, defendant's prototype shop manager, and plaintiff testified there were several instances in the past when Omni-Tek employees had to weld fuel tanks that previously held diesel fuel while working on prototype vehicles. Plaintiff's expert witness also explained that the very existence of a variety of industry and government standards addressing the special hazard of welding a closed vessel that previously contained flammables or combustibles illustrated the inherently dangerous nature of that activity. There was also evidence that plaintiff had no formal training with welding and

that defendant was aware that plaintiff had no formal training or instruction with regard to welding.

### 2. RETAINED CONTROL

A second main exception to the general rule of nonliability for the negligence of an independent contractor is "where the general contractor . . . effectively retains control over the work involved." *Phillips v Mazda Motor Mfg (USA) Corp*, 204 Mich App 401, 408; 516 NW2d 502 (1994) (citation omitted).

Here, viewed in a light most favorable to plaintiff, the evidence was sufficient to create a question of fact with regard to whether defendant retained sufficient control over the work. At the time the motion for a directed verdict was made, there was testimony that during the time the vehicle at issue was being modified, Krawiecki had control of the daily operations at Omni-Tek, including those involving the vehicle. For example, there was evidence that Krawiecki controlled Omni-Tek's budget, made daily work assignments, and reported directly to defendant's chief engineer. Indeed, Krawiecki admitted that it was his job to manage the development and manufacture of prototype vehicles. Therefore, the trial court did not err in denying defendant's motion for a directed verdict.

### III. ADMISSION INTO EVIDENCE OF VARIOUS SAFETY REGULATIONS AND STANDARDS

Defendant also claims that the trial court committed error requiring reversal by admitting into evidence various safety regulations and standards. Defendant contends that because those regulations and stan-

dards were not used for impeachment purposes,[5] and because their probative value is substantially outweighed by their prejudicial effect,[6] this Court should remand the case for a new trial. We do not agree. Defendant has failed to properly preserve this issue for appellate review because its objection was based on grounds not asserted below. MRE 103(a)(1). At trial, defendant objected to their admission on the ground of relevancy. "Objections based on one ground are insufficient to preserve an appellate review based on other grounds." *In re Leone Estate*, 168 Mich App 321, 326; 423 NW2d 652 (1988). Therefore, because we find no plain error and are unconvinced that defendant's substantial rights were adversely affected, we see no reason to review this unpreserved issue. *Meagher, supra* at 724. See MRE 103(d).[7]

---

[5] This portion of defendant's argument is based on MRE 707, which reads:

> To the extent called to the attention of an expert witness upon cross-examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, are admissible for impeachment purposes only. If admitted, the statements may be read into evidence but may not be received as exhibits.

[6] This portion of defendant's argument is based on MRE 403, which reads in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice
> . . . .

[7] In addition, because defendant does not address the issue of relevancy on appeal, we decline to review that issue. See *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 642; 534 NW2d 217 (1995).

IV. ALLEGED IMPROPER ARGUMENTS MADE BY PLAINTIFF'S
COUNSEL

Finally, defendant argues that it was denied a fair trial when plaintiff's counsel made several comments during closing argument that were designed to improperly appeal to the sympathy of the jurors, and to prejudice them against defendant.

> When reviewing asserted improper comments by an attorney, we first determine whether the attorney's action was error and, if it was, whether the error requires reversal. An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial. Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved. [*Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996) (citations omitted).]

We note that defendant did not ask the trial court to give a curative instruction addressing any of the alleged improper remarks.

A. ALLEGATION THAT PLAINTIFF'S COUNSEL IMPUGNED THE
INTEGRITY OF DEFENSE COUNSEL

Defendant argues that plaintiff's counsel acted improperly when making the following comments during his closing argument:

> *Plaintiff's Counsel*: One of [plaintiff's] . . . co-workers Red Mason, Randy Mason . . . told him ["]you ought to flush the tank out.["] Now, I know we had some statements by defense counsel about that and I know he asked Mr. Whitaker [,"]didn't you see a statement.["] But there is a difference isn't there between being at the—at your place of employment with your boss standing right over you with his

boss standing right over him and saying ["]it was his fault, I told him not to do that[,"] and walking through the courtroom doors coming up here, swearing to tell the truth and stating it on the witness stand. You know what the difference is? Making a statement out to the boss under duress in order to cover yourself doesn't come with the little thing called perjury. But you come in here and you say it and there's a penalty of perjury that goes along with it if you're not telling the truth. Maybe that's why defense didn't present the testimony of Red Mason.

*Defense Counsel*: Judge, I don't normally object in closing argument but when counsel makes that kind of a representation to this jury that I would thwart perjury from a witness—

*Plaintiff's Counsel*: Actually, I said exactly the opposite, that he would never do such a thing and that's why he didn't bring in the witness.

*Defense Counsel*: That's what I'm saying—

*Trial Court*: All right, go on.

*Defense Counsel*: —making edifications is totally improper.

We disagree with defendant that the statements made by plaintiff's counsel impugned the integrity of defense counsel by implying that defense counsel had suborned perjury. To the contrary, plaintiff's counsel was making the exact opposite point. Rather than impugning the integrity of defense counsel, plaintiff was theorizing that the reason Mason was not produced as a defense witness to ratify statements he allegedly made was because any such ratification would be perjurious. Such commentary is proper in closing arguments. See *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 109; 330 NW2d 638 (1982) (observing that "it is legitimate to point out that an opposing party failed to produce evidence that it might have, and consequently the jury may draw an inference against the opposing party").

B. ALLEGATION THAT PLAINTIFF'S COUNSEL IMPROPERLY CHAL-
   LENGED KRAWIECKI'S CREDIBILITY

Defendant also argues that plaintiff's counsel acted improperly by suggesting to the jury that defendant had pressured Krawiecki to blame plaintiff for the accident. Defendant cites the following remark as evidence of counsel's improper conduct: "That's Cadillac Gage at work here pure and simple. CYA." We believe it is important to examine the context in which this singular comment was made.

> Went to the hospital . . . right after the accident. Walked in on Mr. Kubisz where he blurted out responsibility for the accident. Just blurted it out. ["]I'm sorry, I should have listened to them, should of done what they said.["] Why would [Krawiecki] . . . do a thing like that: Come in here and tell you a cockamamie story like that? Under pressure from the boss back there in May of 1991? ["]Krawiecki, what the hell happened over there?["] ["]Well, he didn't—its all his fault, not my fault, not my fault.["] *That's Cadillac Gage at work here pure and simple. CYA.* But what a ridiculous story for a man to tell. Can't remember whether or not there were any other nursing personnel present. . . . Can't remember whether or not they were pouring saline solution on Mr. Kubisz to try and stop the burning or the continuing burning deeper. . . . And here's this poor boy laying there with skin hanging off of him like some sort of a ghoul . . . with his throat swelling and beginning to close off his air pipe . . . and here's Pete Krawiecki dashing in for a mad 30 seconds to get the goods. Oh yeah, it's all your fault. Come on. Absolutely ridiculous. [Emphasis added.]

Initially, we note that defendant failed to preserve this matter for appellate review by raising a specific and timely objection to the challenged comments. Further, the matter was not raised in defendant's

motion for judgment notwithstanding the verdict, new trial, or remittitur.

In context, it is clear that plaintiff's counsel was attempting to explain the differences that existed between plaintiff's testimony and Krawiecki's testimony regarding the matter of whether plaintiff had ever admitted fault to Krawiecki while plaintiff was initially being treated for his injuries. Counsel is allowed to "try to persuade the jury to believe their witnesses and disbelieve witnesses of the adverse party" when a conflict in testimony exists. *Wheeler v Grand Trunk W R Co*, 161 Mich App 759, 765; 411 NW2d 853 (1987).

Hence, we conclude that the remarks cited by defendant did not have the effect of denying it a fair and impartial trial.[8]

### C. "VOICE OF THE COMMUNITY"

Defendant also argues that plaintiff's counsel acted improperly when he commented to the jurors that they were acting as "the voice of the community." The record reveals that the remark came at the end of plaintiff's closing argument, as counsel was concluding his remarks concerning damages:

> Mr. Kubisz today earns about $30,000.00 a year at 15 bucks an hour which is what he testified he's currently earning times 40 times 52. It's a little bit more than $30,000.00 per year. Is half that amount reasonable and fair for pain and suffering and scarring and disfigurement into the future—half that amount per year, 15,000? A third of

---

[8] Furthermore, many of these remarks are simply a legitimate characterization of Krawiecki's testimony. *De Voe v C A Hull, Inc*, 169 Mich App 569, 581; 426 NW2d 709 (1988).

that amount perhaps, 10,000, is that reasonable and fair? I think so. But again, it is up to you. *You, ladies and gentlemen are the voice of the community.* You decide what the damages shall be. You decide what the—whether or not the law of negligence should be enforced against Cadillac Gage. You decide whether or not the community will tolerate this kind of conduct of not ever having even read an OSHA regulation. . . . [Emphasis added.]

It was at this point that defendant objected, arguing that plaintiff was making an improper "conscience of the community" argument.

We are not persuaded by defendant's argument. The "voice of the community" reference did not "appeal to the fears and prejudices of" the jury, *People v Bahoda*, 448 Mich 261, 285; 531 NW2d 659 (1995), nor did it "inject issues into the trial broader than those pled and brought out by the testimony below." *Joba Constr Co, Inc v Burns & Roe, Inc*, 121 Mich App 615, 637; 329 NW2d 760 (1982). Therefore, we see no error requiring reversal.

Affirmed.