*In re* LEONE ESTATE

Docket No. 87864. Submitted February 17, 1987, at Detroit. Decided May 2, 1988.

Charles Leone, Peter Leone, Julia McGreevy and Joanna Phillips petitioned the Macomb County Probate Court for the admission of a will executed by their deceased mother, Josephine Leone. Anthony Leone, a son of decedent specifically not provided for in the will, contested the will, claiming that it was the result of undue influence. Following trial, the jury returned a verdict in favor of contestant. Proponents appealed from rulings by the trial court, James F. Nowicki, J., denying motions for a directed verdict, judgment notwithstanding the verdict, and a new trial.

The Court of Appeals *held:*

1. The evidence at trial presented material issues of fact upon which reasonable minds could differ as to whether a fiduciary relationship existed between Peter Leone and the decedent, whether Peter Leone had benefitted from the will, and whether he had an opportunity to influence the decedent's decision in drafting the will. Thus, since it cannot be said that reasonable jurors would not have reached the conclusion that the proponents used undue influence over their mother in the drafting of her will, the trial court properly denied proponents' motions.

2. Proponents' claim that four incidents at trial were so prejudicial as to require a new trial is without merit.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — JUDGMENT NOTWITH-STANDING THE VERDICT — APPEAL.

The standard for the Court of Appeals in reviewing the denial of a motion for a directed verdict or for judgment notwithstanding

REFERENCES

Am Jur 2d, Appeal and Error §§ 110, 112, 849.

Am Jur 2d, Wills §§ 389 *et seq.*

Solicitation of testator to make will or specified bequest as undue influence. 48 ALR3d 961.

Weight and effect of presumption or inference of due execution of will. 40 ALR2d 1223.

the verdict is that the testimony and all legitimate inferences that may be drawn therefrom must be viewed in the light most favorable to the nonmoving party; if there are material issues of fact upon which reasonable minds could differ, the matter is one properly submitted to the jury since neither the trial court nor the Court of Appeals has the authority to substitute its judgment for that of the jury.

2. NEW TRIAL — APPEAL.

The Court of Appeals, when reviewing the denial of a motion for a new trial, accords deference to the trial court's decision because the trial court, having heard the witnesses, is uniquely qualified to judge the jury's assessment of witness credibility; the Court of Appeals will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage of justice.

3. WILLS — UNDUE INFLUENCE.

Undue influence on a testator may be established by a showing that the testator was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will.

4. WILLS — UNDUE INFLUENCE — BURDEN OF PROOF — BURDEN OF PERSUASION.

A presumption of undue influence attaches to a transaction where the evidence establishes (1) the existence of a confidential or fiduciary relationship between a grantor and a fiduciary, (2) that the fiduciary benefits from the transaction, and (3) that the fiduciary had an opportunity to influence the grantor's decision in that transaction; in the case of a will contested on the basis of undue influence the establishment of the presumption shifts the burden of proof onto the proponents of the will, but the burden of persuasion remains with the contestants.

5. WORDS AND PHRASES — FIDUCIARY RELATIONSHIP.

A fiduciary relationship is one founded on trust and confidence by one person in the integrity and fidelity of another.

*John von Batchelder,* for proponents.

*Douglass K. Fischer,* for contestant.

Before: D. E. HOLBROOK, JR., P.J., and J. B. SUL-
LIVAN and M. WARSHAWSKY,* JJ.

PER CURIAM Proponents of the will of Josephine
Leone appeal as of right from a jury verdict find-
ing the will to have been the result of undue
influence. Proponents' motion for judgment not-
withstanding the verdict and motion for new trial
were denied by the probate court. We affirm.

The proponents of the will consist of four of the
decedent's eight adult children: Charles Leone,
Peter Leone, Julia McGreevy and Joanna Phillips.
The contestant, Anthony Leone, is the son who
was specifically not provided for in the will. It was
Anthony's contention that the four proponents
unduly influenced their mother to exclude him
from the will.

The will was executed on February 4, 1978, in
the offices of the decedent's attorney. Josephine
Leone died in January, 1984. The family relation-
ship apparently broke down following the death of
the father, Anthony Leone, Sr., in December 1973.
The center of the controversy within the family
involved a $6,200 bank account which Anthony
Leone claims his father, with his mother's consent,
left to him. However, proponents claim that An-
thony took the money without their mother's con-
sent and that this was the reason she excluded
him from the will.

On appeal, proponents claim there was insuffi-
cient evidence of undue influence, essentially chal-
lenging the trial court's denial of their motions for
a directed verdict and judgment notwithstanding
the verdict. Proponents also argue that the verdict
was against the great weight of the evidence,

* Circuit judge, sitting on the Court of Appeals by assignment.

which is essentially a review of proponent's motion for a new trial.

In reviewing a trial court's denial of a motion for a directed verdict or a judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the nonmoving party. If there are material issues of fact upon which reasonable minds could differ, the matter is one properly submitted to the jury. If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury. *In re Sarras Estate,* 148 Mich App 171, 175; 384 NW2d 119 (1986).

When reviewing the denial of a motion for a new trial, this Court accords deference to the trial court's decision because the trial court, having heard the witnesses, is uniquely qualified to judge the jury's assessment of witness credibility. *May v Parke, Davis & Co,* 142 Mich App 404, 410; 370 NW2d 371 (1985). We will not substitute our judgment for that of the jury unless a review of the record reveals a miscarriage of justice. *Id.,* pp 410-411.

In general, undue influence may be shown where the testator was subjected to threats, misrepresentations, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the testator to act against her inclination and free will. *Kar v Hogan,* 399 Mich 529, 537; 251 NW2d 77 (1976); *In re Mikeska Estate,* 140 Mich App 116, 120; 362 NW2d 906 (1985). A presumption of undue influence attaches when the evidence establishes (1) the existence of a confidential or fiduciary relationship between the testator and the fiduciary, (2) the fiduciary or interest which he represents benefits from the transaction and (3) the fiduciary had an

opportunity to influence the testator's decision in that transaction. *Kar, supra,* p 537; *In re Mikeska, supra,* p 121. A fiduciary relationship is defined as one founded on trust and confidence by one person in the integrity and fidelity of another. *In re Wood Estate,* 374 Mich 278, 282; 132 NW2d 35 (1965). Once established, a "mandatory inference" of undue influence is created which shifts the burden of proof onto the proponents of the will although the ultimate burden of persuasion remains with the contestant. *Kar, supra,* pp 541-542.

In the instant action, the contestant presented prima facie evidence of a fiduciary relationship between Peter Leone and the decedent, that the fiduciary had benefited from the will, and that the fiduciary had an opportunity to influence the decedent's decision in drafting the will. Although the evidence was conflicting, there was testimony that Peter had a great deal of influence over his mother. Peter had lived with his mother all his life and took care of her needs and ran errands for her. There was testimony that the decedent had very poor eyesight and that Peter drove her wherever she needed to go, to places such as the store, the bank, the doctor's office or the lawyer's office. There was also testimony that Peter influenced his mother by playing on her fear of being alone. The contestant, as well as other members of the family, testified that Peter threatened to leave his mother if Anthony was allowed to come into the home. Peter obviously benefited from the will by taking the family home in Fraser, Michigan.

On the other hand, other family members testified that Peter was basically a good son who looked after his mother. These members testified that Josephine was in excellent health in 1978, had no problems reading and took care of her own affairs. There was also testimony that Anthony

had upset his mother by taking the $6,200 bank account money against her wishes. Some of the testimony suggested that Anthony ignored his mother and was disrespectful to her following his father's death.

Clearly, the evidence presented material issues of fact upon which reasonable minds could differ. Thus, we cannot say that reasonable jurors could not have reached the conclusion that the proponents used undue influence over their mother in the drafting of her will. We decline to substitute our judgment for that of the trier of fact.

Proponents next argue that four highly prejudicial incidents occurred at trial which caused a miscarriage of justice. First, John Blahunka volunteered a long statement about the death of his wife and mother-in-law, the decedent, and apparently broke into tears on the stand. Second, witness Komasinski, decedent's pharmacist, testified regarding prescriptions issued to the decedent for which he had no records. Third, witness Briskey testified regarding the difficulty he had in obtaining records from decedent's physician. Finally, Peter Leone passed out in front of the jury during closing argument.

We first note that proponents failed to raise this issue in the trial court by a motion for mistrial or in their motion for new trial. Objections based on one ground are insufficient to preserve appellate review based on other grounds. *Harvey v Security Services, Inc,* 148 Mich App 260, 265; 384 NW2d 414 (1986). Regardless, we find that none of the incidents merit a new trial.

The trial court sustained objections to the testimony of Komasinski and Briskey and ruled the testimony improper. As to the emotional outbursts by Blahunka and Peter Leone, we fail to see how

proponents were prejudiced. Again, the trial court was in the best position to determine whether any prejudice was sufficient to require a new trial. Moreover, proponents failed to request specific jury instructions or to object to the instructions as given. We are not convinced that a miscarriage of justice resulted.

Affirmed.