# STATE OF MICHIGAN

# COURT OF APPEALS

In re ROBERT WINFIELD CEDERQUIST
REVOCABLE TRUST.

---

BONNIE K. ROWAN, as Trustee of the ROBERT
WINFIELD CEDERQUIST REVOCABLE
TRUST, and RANDAL T. LEWIS,

     Appellees,

v

SUSAN BILLINGTON a/k/a SUSAN
CEDERQUIST, ROBERT J. CEDERQUIST,
REBEKA LEWIS a/k/a REBEKA CEDERQUIST,
and MICHELE H. ROSS a/k/a MICHELE H.
CEDERQUIST,

     Appellants.

UNPUBLISHED
July 28, 2015

No. 321290
Montcalm Probate Court
LC No. 2011-030951-ML;
       2011-030951-TV

---

SUSAN BILLINGTON a/k/a SUSAN
CEDERQUIST, ROBERT J. CEDERQUIST,
REBEKA LEWIS a/k/a REBEKA CEDERQUIST,
and MICHELE H. ROSS a/k/a MICHELE H.
CEDERQUIST,

     Plaintiffs-Appellants,

v

BONNIE K. ROWAN and RANDAL T. LEWIS,

     Defendants-Appellees.

No. 321291
Montcalm Probate Court
LC No. 2011-031015-CZ

---

*In re* Estate of ROBERT WINFIELD CEDERQUIST.

---

BONNIE K. ROWAN, as Personal Representative
of the Estate of ROBERT WINFIELD
CEDERQUIST, and RANDAL T. LEWIS,

     Appellees,

v

SUSAN BILLINGTON a/k/a SUSAN
CEDERQUIST, ROBERT J. CEDERQUIST,
REBEKA LEWIS a/k/a REBEKA CEDERQUIST,
and MICHELE H. ROSS a/k/a MICHELE H.
CEDERQUIST,

     Appellants.

No.     321350
Montcalm Probate Court
LC No.  2011-030951-DE

---

Before:  MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

In these consolidated cases, appellants argue that the trial court erred granting appellees summary disposition under MCR 2.116(C)(10).  We affirm.

These appeals arise out of appellants' actions before the trial court alleging that appellees exerted undue influence over appellants' father, decedent Robert W. Cederquist, resulting in decedent's naming Bonnie Rowan the primary beneficiary of his retirement account proceeds and naming Randal Lewis the contingent beneficiary of the proceeds, in decedent's naming appellees the joint successor trustees of the Robert Cederquist Revocable Trust and providing that appellees would split the assets of the trust, and in decedent's making lifetime transfers to appellees.[1]  Appellees moved the trial court for summary disposition under MCR 2.116(C)(10) regarding appellants' claims of undue influence.  The trial court granted that motion, finding that there was no evidence of undue influence or a presumption of undue influence in this case.

Under MCR 2.116(C)(10), summary disposition of all or part of a claim or defense may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of

---

[1] Appellants also sought invalidation of decedent's will and a quitclaim deed transferring decedent's home into the trust.  But on stipulation of the parties, the trial court dismissed those claims on January 31, 2012.

law." In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), we must "determine whether there exists a genuine issue of material fact on which reasonable minds could differ or whether the moving party is entitled to judgment as a matter of law." *Gibson v Neelis*, 227 Mich App 187, 190; 575 NW2d 313 (1997). When evaluating a motion under MCR 2.116(C)(10), a court considers the "entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A court must draw all reasonable inferences in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). The grant or denial of summary disposition under MCR 2.116(C)(10) is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

"To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003), quoting *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976). Motive, opportunity, or the ability to control, without proof that it was exercised is insufficient to establish undue influence. *Id*. In certain circumstances, undue influence may be presumed:

> A presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993).]

Appellants are correct that there was evidence that Rowan schemed to turn decedent against his children and that decedent's relationship with his children soured after Rowan started to spend more time with decedent. Appellants argue that Rowan exercised undue influence over decedent by poisoning his mind against them. Specifically, appellants argue that "Michigan law recognizes that an undue influence claim may be predicated on the mind-poisoning model." But, in support of that argument, appellants cite *In re Sprenger's Estate*, 337 Mich 514, 522-523; 60 NW2d 436 (1953), for the proposition that "[m]isrepresentations made for the purpose of influencing the testator may constitute undue influence if it is shown that the testator relied upon such misrepresentations in the disposition of his property." And appellants cite *In re Rosa's Estate*, 210 Mich 628, 630; 178 NW 23 (1920), and *Haines v Hayden*, 95 Mich 332, 342-347; 54 NW 911 (1893), two cases where undue influence was found based on lies told to the decedents regarding their families. The cases appellants rely on indicate that an undue influence claim may be based on a person's misrepresentations, which may take the form of lies regarding family and family relationships. Thus, mere poisoning of decedent's mind in this case is insufficient; there must also be evidence that Rowan made *misrepresentations* that poisoned decedent's mind. *Karmey*, 468 Mich at 75. Having reviewed the facts proffered by appellants and the record as a whole, we find no evidence of a specific misrepresentation Rowan made to decedent. While the evidence proffered by appellants permits speculation that Rowan may have lied about them to

influence decedent, mere conjecture or speculation is insufficient to provide the evidentiary proof necessary to establish a genuine issue of material fact. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Because there was no evidence of threats, misrepresentation, undue flattery, fraud, or physical or moral coercion, there is no genuine issue of material fact regarding the existence of undue influence. *Allison*, 481 Mich at 425; *Karmey*, 468 Mich at 75.

Alternatively, appellants argue that the trial court should have found evidence supporting a presumption of undue influence. It is undisputed that Rowan benefited from the series of transactions decedent made. Also, it is undisputed that Rowan had the opportunity to influence decedent. Therefore, the only question at issue is whether a confidential or fiduciary relationship existed between Rowan and decedent. *Erickson*, 202 Mich App at 331.

In *Karmey*, 468 Mich at 74 n 3, the Michigan Supreme Court defined generally what a "confidential or fiduciary relationship" is in the context of an undue influence claim:

> Although a broad term, "confidential or fiduciary relationship" has a focused view toward relationships of inequality. This Court recognized in *In re Wood's Estate*, 374 Mich 278, 287, 132 NW2d 35 (1965), that the concept had its English origins in situations in which dominion may be exercised by one person over another. Quoting 3 Pomeroy, *Equity Jurisprudence* (5th ed, 1941), § 956a, this Court said a fiduciary relationship exists as fact when " 'there is confidence reposed on one side, and the resulting superiority and influence on the other.' " 374 Mich 283.

> Common examples this Court has recognized include where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser. 374 Mich 285-286. In these situations, complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power, or moral authority to control the subject matter at issue.

Many of the facts appellants proffer do not provide evidence of a confidential or fiduciary relationship between Rowan and decedent because those facts do not provide any evidence of a relationship of inequality or of decedent's placing complete trust in Rowan. *Karmey*, 468 Mich at 74 n 3. There was, however, evidence of decedent's enfeebled health while decedent was signing the beneficiary designations and estate plan documents, and there was evidence that Rowan was his caregiver. Michigan courts have regularly considered evidence of a caregiver-care receiver relationship along with other evidence in determining whether a presumption of undue influenced existed. See, e.g., *In re Estate of Leone*, 168 Mich App 321, 324-325; 423 NW2d 652 (1988). Still, there was no evidence that decedent relied on Rowan as his caregiver to provide advice on how to manage his money or to exercise independent judgment or control over his money. The evidence shows that Rowan was present while decedent worked with his financial advisor and attorney regarding the financial transactions, and that Rowan provided assistance to decedent, his financial advisor, and his attorney as they executed decedent's financial transactions. This scenario shows this was not a case where "complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power,

or moral authority to control the subject matter at issue" as required for the existence of a confidential or fiduciary relationship. *Karmey*, 468 Mich at 74 n 3, quoting *Wood's Estate*, 374 Mich at 283. Hence, appellants' arguments regarding the existence of evidence of a confidential or fiduciary relationship fail to demonstrate a genuine issue as to any material fact regarding the existence of a presumption of undue influence. *Allison*, 481 Mich at 425.

We affirm. As the prevailing parties, appellees may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Cynthia Diane Stephens