# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF CHARLES ROLAND
GROSHON and CHARLES ROLAND GROSHON
TRUST.

SANDRA REED,

      Appellant,

v

KENNETH BURKHARDT,

      Appellee.

UNPUBLISHED
November 21, 2017

No. 332445
Genesee Probate Court
LC Nos. 14-198412-DE
           14-200063-TV

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In this contest over the probate and nonprobate assets of decedent Charles Roland Groshon, appellee Kenneth Burkhardt petitioned to set aside pour-over will and trust documents executed by Groshon, which revoked Burkhardt's prior designation as beneficiary of Groshon's trust and named appellant Sandra Reed beneficiary of the trust estate. A jury determined that the documents were invalid, finding that Groshon had lacked the testamentary capacity to execute them and that Reed had induced the documents' creation through undue influence. The trial court granted Reed's motion for judgment notwithstanding the jury's verdict (JNOV) on the issue of testamentary capacity, but denied the motion with respect to the verdict of undue influence. Reed appeals as of right. We affirm.

This Court reviews de novo a trial court's decision regarding a motion for JNOV. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009).

> [A] motion for JNOV should be granted only when there was insufficient evidence presented to create an issue of fact for the jury. This Court must view the testimony and all legitimate inferences drawn from the testimony in the light most favorable to the nonmoving party. If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand. [*Id*. at 532 (quotation marks and citations omitted).]

-1-

"In general, undue influence may be shown where the testator was subjected to threats, misrepresentations, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the testator to act against her inclination and free will." *In re Estate of Leone*, 168 Mich App 321, 324; 423 NW2d 652 (1988). "Unquestionably undue influence may be shown by indirect and circumstantial evidence, but it must be evidence of probative force beyond mere suspicion. . . ." *In re Langlois Estate*, 361 Mich 646, 652; 106 NW2d 132 (1960) (quotation marks and citation omitted).

Under MCL 700.3407(1)(c), "[a] contestant of a will has the burden of establishing . . . undue influence[.]" Indeed, long before MCL 700.3407(1)(c) was enacted in April 2000,[1] it was recognized that a party alleging undue influence initially bears the burdens of both proof and persuasion, *Kar v Hogan*, 399 Mich 529, 539; 251 NW2d 77 (1976), holding limited in part on other grounds by *In re Estate of Karmey*, 468 Mich 68, 74-75 (2003), and ordinarily, proof of "mere opportunity" to *exert* undue influence is insufficient to establish that such influence was actually brought to bear, see, e.g., *In re Jennings Estate*, 335 Mich 241, 247; 55 NW2d 812 (1952) ("mere opportunity . . . does not suffice to establish undue influence"). However, it is well-settled that the existence of a fiduciary relationship between the decedent and the beneficiary alters the calculus of this inquiry. See *Karmey*, 468 Mich at 73; *Kar*, 399 Mich at 537; *Leone*, 168 Mich App at 324-325. The contestant can create a rebuttable presumption of undue influence by introducing

> evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*Karmey*, 468 Mich at 73, quoting *Kar*, 399 Mich at 537.]

Here, all three of these elements are satisfied. First, it is undisputed that when Groshon signed the disputed documents, Reed was acting as Groshon's attorney in fact pursuant to a durable power of attorney. As a matter of law,[2] "an attorney in fact acting under the authority of a general power of attorney is in a fiduciary relationship with the principal," and bound by the same fiduciary obligations that are incumbent upon any agent. *In re Susser Estate*, 254 Mich App 232, 235; 657 NW2d 147 (2002). Second, it is also undisputed that Reed directly benefitted from the challenged transactions because those transactions named her as a beneficiary. Finally, there is ample evidence, both direct and circumstantial, that Reed had the opportunity to influence Groshon's decisions. There is evidence that she frequently stayed at his home, spent

---

[1] See 1998 PA 386, effective April 1, 2000.

[2] "[W]hether there exists a confidential relationship *apart from a well defined fiduciary category* is a question of fact," *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 602; 792 NW2d 344 (2010) (quotation marks and citation omitted; emphasis added), but as a general rule, "[w]hether a fiduciary relationship exists is a question of law for the court to decide," see *Kern v Kern-Koskela*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 330183); slip op at 7, lv pending.

time with him privately, drove him to appointments with his attorneys, contacted his attorneys independently, filled out life insurance forms for his execution, and listened to his telephone conversations. In denying Reed's motion for JNOV, the probate court aptly explained:

> In this case, the jury found that Reed unduly influenced Groshon. It is impossible to know what evidence the jury's decision is based on, but this Court's inquiry is whether the decision was reasonable based on all the evidence. There was testimony that Reed essentially "came out of the woodwork"—no one previously close to Groshon seemed to know who she was. Reed took charge of Groshon's care and finances, thus giving her the opportunity to unduly influence him. The jury may have found [witnesses'] testimony about the "little blue pill" and Reed's straddling of Groshon to be compelling evidence that Groshon's will had been overpowered. The jury may have found Reed's standoffish personality to others interested in Groshon's welfare as being evidence of her keeping others away so that he would continue to do her bidding. The jurors may have thought of the breakdown of Burkhardt and Groshon's relationship as being evidence of Reed's moral coercion, not Groshon's own disdain of Burkhardt.
>
> A finding of undue influence is by nature a finding drawn from inferences; undue influence is almost always done behind the scenes. This Court cannot know what inferences the jury drew, but the Court can imagine what they might have been. The inferences listed above are perfectly reasonable, and they could support a finding of undue influence by a preponderance of the evidence.

Once a rebuttable presumption of undue influence arose, Reed bore "the burden of going forward with evidence that the transaction was free of undue influence." See *Kar*, 399 Mich at 542. See also MRE 301 ("[i]n all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast"); *Widmayer v Leonard*, 422 Mich 280, 289; 373 NW2d 538 (1985) ("if the jury finds a basic fact, they must also find the presumed fact unless persuaded by the evidence that its nonexistence is more probable than its existence"). As explained in *Kar*, 399 Mich at 542:

> If the trier of fact finds the evidence by the defendant as rebuttal to be equally opposed by the presumption, then the defendant has failed to discharge his duty of producing sufficient rebuttal evidence and the "mandatory inference" remains unscathed. This does not mean that the ultimate burden of proof has shifted from plaintiff to defendant, but rather that plaintiff may satisfy the burden of persuasion with the use of the presumption, which remains as substantive evidence, and that the plaintiff will always satisfy the burden of persuasion when the defendant fails to offer sufficient rebuttal evidence.

In other words, unless the jury found that Reed presented rebuttal evidence making it more probable than not that she never unduly influenced Groshon, the jury could have rationally found in Burkhardt's favor on the basis of the presumption of undue influence *alone*.

Hence, we discern no error in the probate court's refusal to grant Reed's request for JNOV. By establishing a rebuttable presumption of undue influence, Burkhardt created a question of fact for the jury. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 701; 880 NW2d 269 (2015), citing *In re Peterson Estate*, 193 Mich App 257, 261; 483 NW2d 624 (1991) ("[w]hether the presumption of undue influence is rebutted is a question to be resolved by the finder of fact"). And because the presumption of undue influence raised at least one material issue of fact for resolution by the jury, the probate court properly denied Reed's motion for JNOV. See *Heaton*, 286 Mich App at 532 ("a motion for JNOV should be granted *only* when there was insufficient evidence presented to create an issue of fact for the jury") (emphasis added).

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-4-